**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:20-cv-61206-RKA – Altman/Hunt**

ANUEL ST. CLAIR, individually and on behalf of all others similarly situated,

**CLASS ACTION**

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
_________________________________________/

**DEFENDANT USHEALTH ADVISORS, LLC'S MOTION TO DISMISS COUNTS I AND II FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant, USHEALTH Advisors, LLC ("USHA"), moves this Court to dismiss Counts I and II of Plaintiff Anuel St. Clair's ("Plaintiff") First Amended Class Action Complaint, (ECF 20, "FAC"), with prejudice.

**PRELIMINARY STATEMENT**

Plaintiff's lawsuit aims to enforce a statutory provision that, at the time of the alleged telephone calls, was facially unconstitutional and thus cannot be enforced. Two of Plaintiff's claims are brought under a provision of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), that the Supreme Court recently declared to be in violation of the First Amendment and unconstitutional. *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020) ("*AAPC*"). To preserve the statute, the Supreme Court severed the "government-debt exception," which impermissibly exempted from the provision telephone calls that were "made solely to collect a debt owed to or guaranteed by the United States." But, under settled and bedrock principles of law, and as held by two courts – the only courts so far to address this issue – that severance applies prospectively. Thus, because the telephone calls at issue allegedly took place

when the unconstitutional government-debt exception applied, this Court lacks subject-matter jurisdiction over Counts I and II of the First Amended Complaint, and their dismissal is required.

## STATEMENT OF FACTS

In his FAC, Plaintiff alleges that he received prerecorded telephone calls on April 1, 2020, and during the preceding year, that violated the TCPA. FAC ¶¶ 28-29. Notably, Plaintiff does not allege that he received any allegedly violative telephone calls before November 2, 2015, when the "government-debt exception" was added to the TCPA, (129 Stat. 584; Pub. L. 114–74, title III, § 301(a), or after July 6, 2020, the date of the *AAPC* decision.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

A motion to dismiss for lack of subject-matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction) . . . ." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "The requirement that [subject-matter] jurisdiction be established as a threshold matter . . . is 'inflexible and without exception,' for '[j]urisdiction is power to declare the law,' and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal citations omitted)). As "the party who seeks the exercise of jurisdiction in his favor," the plaintiff "must carry throughout the litigation the burden of showing that he is properly in court." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). When a court lacks subject-matter jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1868).

## II. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE TCPA CLAIMS BECAUSE THOSE PROVISIONS WERE UNCONSTITUTIONAL AT THE TIME OF THE ALLEGED VIOLATIONS

### A. The Supreme Court's *AAPC* Ruling

In *AAPC*, the issues presented were "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." No. 19-631, 2019 WL 6115075, *I (U.S. Nov. 14, 2019). *See also AAPC*, 140 S. Ct. 812 (2020) (granting petition for certiorari). On July 6, 2020, the Supreme Court decided *AAPC*. The Court's Opinion was a deeply fractured plurality, but a majority of justices were able to agree on two things: (1) "Six Members of the Court . . . conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment" and the government-debt exception could not pass strict scrutiny; and (2) "seven members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *AAPC*, 140 S. Ct. at 2343.

### B. The Invalidation of the TCPA Provision at Issue as Unconstitutional Precludes Subject-Matter Jurisdiction

The Supreme Court's determination of unconstitutionality in *AAPC* renders Section 227(b)(1)(A)(iii) void and deprives this Court of subject-matter jurisdiction over Counts I and II of the First Amended Complaint. Although the Supreme Court "cure[d] that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute," (*id.* at 2356), that was prospective only, and does not alter or eliminate the fact that for nearly five years – during which time ***all*** of the telephone calls Plaintiff complains about allegedly occurred – Section 227(b)(1)(A)(iii) was unconstitutional and void, meaning the Court

has no jurisdiction to enforce that provision. As two district courts have already found, that conclusion necessarily follows from the *AAPC* ruling. *See Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915, *7 (N.D. Ohio Oct. 29, 2020) ("Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117, *2 (E.D. La. Sept. 28, 2020) ("That fact deprives the Court of jurisdiction over much of this action.").

It is axiomatic that a person cannot violate a statutory provision that was unconstitutional at the time of the alleged violation. Chief Justice Marshall delineated that "[a]n act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803). Thus, "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886). A corollary to that bedrock principle is that "[i]f the law which defines the offense and prescribes its punishment is void, the court [is] without jurisdiction." *The Ku Klux Cases*, 110 U.S. 651, 654 (1884). Indeed, the courts have long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes," because "[a]n unconstitutional law is void, and is as no law" so that "[a]n offence created by it is not a crime." *Ex parte Siebold*, 100 U.S. 371, 376, 377 (1879). *See also Montgomery v. La.*, 136 S. Ct. 718, 731 (2016) ("A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void. It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule . . . .") (citing *Siebold*, 100 U.S. at 376).

In other words, "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United

States' to enforce) . . . ." *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996). *See also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-60 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is as no law.'") (quoting *Marbury*, 5 U.S. at 178; *Siebold*, 100 U.S. at 376)). Here, the unconstitutional law is the very TCPA provision upon which Plaintiff premises Counts I and II, and because that law at the time of the alleged violations was "repugnant to the constitution [and] void," (*Marbury*, 5 U.S. at 180), the Court lacks jurisdiction to adjudicate those claims.

Applying these principles, the two district courts to have addressed this issue in the wake of *AAPC* concluded, both in thorough and reasoned decisions, that the courts lack subject-matter jurisdiction to hear claims brought under § 227(b)(1)(A)(iii) for telephone calls alleged to have taken place when the statute was unconstitutional and could not be enforced. *See Lindenbaum*, 2020 WL 6361915 at *2-8; *Creasy*, 2020 WL 5761117 at *1-7. Both courts emphasized that there is no subject-matter jurisdiction to enforce a law that unconstitutionally restricted speech when the speech allegedly took place. In *Creasy*, the court observed that "a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion." 2020 WL 5761117 at *3. Similarly, in *Lindenbaum*, the court reasoned, "at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction. The Court cannot wave a magic wand and make that constitutional violation disappear." 2020 WL 6361915 at *7.

Both courts relied upon *Grayned v. City of Rockford*, where the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that even though the anti-picketing provision at issue was later removed by the legislature, courts "[n]ecessarily . . . must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."

408 U.S. 104, 107 n.2 (1972). In other words, the inquiry is whether the offending statute was constitutional ***at the time the alleged speech or violation occurred***, not whether it was subsequently cured by legislative or, as in the case of the TCPA's government-debt exception, judicial action.[1] And it is undeniable that § 227(b)(1)(A)(iii) was unconstitutional at the time of the alleged telephone calls that Plaintiff is suing over.

While the Supreme Court severed the government-debt exception in *AAPC*, "severance of the government-debt exception applies only prospectively." *Lindenbaum*, 2020 WL 6361915 at *3. *See also Arthrex, Inc. v. Smith & Nephew, Inc*., 953 F.3d 760, 767 (Fed. Cir. 2020) (O'Malley, J., concurring) ("[J]udicial severance is not a 'remedy'; it is a forward-looking judicial fix."). As the *Lindenbaum* court explained, "severance of the content-based restriction does not offer a 'remedy' to correct *past* harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong." 2020 WL 6361915 at *6. In support of that finding, the *Lindenbaum* court relied upon the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), which was issued a week before *AAPC*. There, the Supreme Court severed a provision regarding removal of the head of the agency that rendered prior agency decisions unconstitutional, but remanded the case to address whether the subject act was validly ratified. *See*

---

[1] *See also, e.g., Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) ("[A] defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."); *Montgomery*, 136 S.Ct. at 731 (explaining that a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees.").

*Seila Law*, 140 S. Ct. at 2208. As the *Lindenbaum* court observed, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified." 2020 WL 6361915 at *6 n.1. Rather, the "government-debt" exception made the entirety of that form of § 227(b)(1)(A)(iii) unconstitutional and unenforceable, and this Court lacks subject-matter jurisdiction to impose liability upon Defendant for a violation of that provision. *See id.* at *7 ("The insertion of the government-debt exception transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction."); *Creasy*, 2020 WL 5761117 at *5 ("[T]he *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.").

### C. Nothing in *AAPC* Requires or Persuasively Calls for a Different Result

Given that *AAPC* was a declaratory judgment action, it is unsurprising that the Supreme Court did not decide the ruling's impact on alleged violations during the unconstitutional period of Section 227. Plaintiff may attempt to rely upon *obiter dictum* in the plurality opinion to avoid dismissal, but such an attempt would be unavailing.

As the court in *Creasy* observed, on the question being raised by this Motion, *AAPC* offers "precious little. In the few lines of nonbinding dicta shedding any light on the issue, the Court offered a pair of squarely contradictory answers." 2020 WL 5761117 at *2. *See also Lindenbaum*, 2020 WL 6361915 at *5 ("[T]his Court agrees with the characterization of footnote 12 set forth in . . . *Creasy* . . . ."). In a footnote, the plurality opinion – in which only Chief Justice Roberts, Justice Alito, and Justice Kavanaugh joined – suggests that no one who had impermissibly been favored by Congress (government debt collectors) "should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt

exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate." 140 S.Ct. at 2355 n.12.

As for the other callers during that time who were the victims of Congress's impermissible and unconstitutional content discrimination, the plurality opinion simply states, without any explanation or reference to the principle that an unconstitutional law is repugnant and void, "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Justice Gorsuch, in the portion of his opinion joined by Justice Thomas, disagreed with that "suggest[ion]," explaining that "[a] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.* at 2366.

Nothing in that disagreement undercuts the conclusion that the Court lacks subject-matter jurisdiction over claims seeking to impose liability under an unconstitutional law. To begin with, as the court in *Creasy* correctly observed, the plurality opinion's footnote suggestion is not binding or controlling because it constitutes the opinion of only three justices and, in any event, is no more than "passing Supreme Court dicta of no precedential force . . . ." 2020 WL 5761117 at *2.

Moreover, the plurality's suggestion that liability could still be imposed upon defendants under a law at the time that it was unconstitutional does not square with the constitutional jurisprudence developed over two hundred years that supports Justice Gorsuch's position. The *Creasy* court relied on that jurisprudence to "conclude[ ] that Justice Gorsuch's is the better argument as a matter of law and logic." 2020 WL 5761117 at *2. *See also Lindenbaum*, 2020 WL 6361915 at *5 ("Absent footnote 12, the Court finds little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the

existence of the exception."). The plurality opinion's passing suggestion in a footnote does not mention or consider any of that case law. One would think that if three Supreme Court justices intended to overrule that important case law, they would have done so explicitly, especially when no party asked them to do so and it was not briefed. *Accord Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.").

*AAPC* does not address, let alone upend, the constitutional principles that preclude subject-matter jurisdiction over claims asserting violations of a law when the law was unconstitutional. The court in *Creasy* emphasized both that "a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion," which is what Plaintiffs' TCPA claims would seek to do here, and that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." 2020 WL 5761117 at *3 (quoting *Grayned*, 408 U.S. at 107 n.2; *Baucum*, 80 F.3d at 541-42). These principles take on outsized significance in this case give the nature of the Supreme Court's holding in *AAPC*, which was that in adding the government-debt exception, Congress impermissibly and unconstitutionally favored certain speech (collection of government debt) over all others. This addition "fundamentally alter[ed] the *entire* provision [Section 227] . . . . Without the exception, § 227(b)(1)(A)(iii) bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in *AAPC*." *Id.* The effect of the government-debt exception thus was to render "the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) . . . void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*." *Id.*

The *Lindenbaum* court ruled similarly. It echoed Justice Gorsuch's astute observation in critiquing the plurality opinion's suggestion that liability could still be imposed against defendants not covered by the government debt-exception notwithstanding the ruling that that version of the provision was unconstitutional, as that would perpetuate the content discrimination that led to the invalidation of Section 227 as it existed from November 2, 2015 to July 6, 2020. *See AAPC*, 140 S.Ct. at 2366 ("[A] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."). The *Lindenbaum* court reasoned,

> if the statute is not considered void *ab initio*, it contains an unconstitutional content-based restriction that improperly favors some speech over other speech. And, to treat it as void *ab initio* only as to certain parties [*i.e.*, government debt collectors] would likely raise its own set of equal treatment concerns–the very concern raised by the *AAPC* dissent. The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And, a later amendment to a statute cannot be retroactively applied.

*Lindenbaum*, 2020 WL 6361915 at *7 (citing *Grayned*, 408 U.S. at 107 n.2).

Basic and fundamental notions of due process, reinforced in hundreds of years of constitutional jurisprudence, make clear that the unconstitutional provision of the TCPA at issue in this lawsuit is void for purposes of this case and this Court lacks subject-matter jurisdiction over claims seeking to impose liability under the void and unconstitutional provision. Otherwise, government debt collectors would continue to enjoy preferential treatment – protection from liability – while anyone engaging in other speech during the unconstitutional period would continue to face the prospect of ruinous liability,[2] even though the law being enforced was unconstitutional at the time of that speech precisely because of that type of favoritism.

---

[2] *See, e.g.*, *McMillon v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

## CONCLUSION

When a court lacks subject-matter jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *McCardle*, 7 Wall. at 514. For the foregoing reasons, USHA respectfully requests that the Court enter an order dismissing Counts I and II of the FAC for lack of subject-matter jurisdiction, and providing any other relief the Court deems just and appropriate.

Dated: November 5, 2020

Respectfully submitted,

By: */s/ Gregg I. Strock*
JEFFREY A. BACKMAN
Florida Bar No. 662501
Gregg I. Strock
Florida Bar No. 1010140
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
gregg.strock@gmlaw.com
lisa.webster@gmlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record in compliance with the Federal Rules of Civil Procedure, on November 5, 2020.

*/s/ Gregg I. Strock*
Gregg I. Strock