**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:20-cv-61206-RKA – Altman/Hunt**

ANUEL ST. CLAIR, individually and on behalf of all others similarly situated,

**CLASS ACTION**

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
_______________________________________/

**DEFENDANT USHEALTH ADVISORS, LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II FOR LACK OF SUBJECT MATTER JURISDICTION**

## PRELIMINARY STATEMENT

Defendant USHEALTH Advisors, LLC's ("USHA") Motion to Dismiss is based on the core principle that an unconstitutional law cannot be enforced and the federal courts lack subject-matter jurisdiction to do so. As explained in USHA's Motion, the Supreme Court's recent holding that the Telephone Consumer Protection Act's "robocall restriction with the government-debt exception" – *i.e.*, the version of 47 U.S.C. § 227(b)(1)(A)(iii) in effect during the telephone calls at issue in this case – "is content-based" and fails strict scrutiny means that restriction is null and void as facially unconstitutional content-discrimination in violation of the First Amendment. *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2347 (2020) ("*AAPC*"). Only as a result of the Supreme Court's severance of the government-debt exception from the "robocall restriction," the restriction in that rewritten – and constitutional – form may continue to be applied, but only ***prospectively***. As USHA argued in the Motion, and as two district courts recently held,[1] settled principles of law provide that that the Supreme Court's ruling as to the version of § 227(b)(1)(A)(iii) in effect starting November 2, 2015 means that no person can be subject to liability under that law for prior speech during that period because that law was facially unconstitutional. While three justices of the Supreme Court in a footnote – footnote 12 – suggested otherwise, they provided no explanation, support, or analysis of the relevant legal principles to the contrary, and no court has embraced and followed that "fleeting" dictum.

Plaintiff's Opposition fails to provide this Court with any good reason to be the first to do so and deviate from the well-reasoned decisions in *Creasy* and *Lindenbaum*. Rather than address the relevant issues and legal principles head on, Plaintiff constructs a false narrative that a "supermajority" of the Supreme Court agreed with footnote 12 and thus held that liability can be imposed for speech during the period of facial unconstitutionality on the same discriminatory basis that led to the law's invalidation, in effect that the severance ruling applies retroactively as if Congress did not amend the robocaller restriction in 2015 and no content discrimination took place. The Opposition chides USHA and the judges in *Creasy* and *Lindenbaum* for ignoring that, but one cannot ignore something that never was.[2] Also incorrect are Plaintiff's assertions that the Supreme

---

[1] *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc*., No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020).

[2] Plaintiff's casted aspersions should also fall on deaf ears considering no district court has yet to agree with Plaintiff's position on this issue.

Court did not hold § 227(b)(1)(A)(iii) to be facially unconstitutional, but held that only as to the government-debt exception. Plaintiff is confusing severability – which aims at determining if an unconstitutional law can survive in modified form – with the underlying (and necessarily broader) determination of the law's unconstitutionality in unsevered form. There is no question that the Supreme Court held "the ***robocall restriction*** with the government-debt exception is content-based" and unconstitutional. *AAPC*, 140 S. Ct. at 2347 (emphasis added). That is the law Plaintiff seeks to have this Court enforce on Counts I and II. Nor was that subject ignored in *Creasy* and *Lindenbaum*, as Plaintiff also contends. The plaintiffs in those cases made the same argument, and it was rejected both times. It should be rejected here, too.

Plaintiff never addresses the settled constitutional jurisprudence discussed in the Motion that requires the facial constitutionality of the law to which speech is being subjected to be determined by the law ***as it existed at the time of the subject speech***, as opposed to a version that was subsequently cured by amendment. Presumably because Plaintiff knows he has no good answer, he ignores all of that and falsely states USHA is seeking to "take down" the robocaller restriction in the manner the Supreme Court rejected in *AAPC*. Nothing in USHA's Motion suggests or would result in the conclusion that the robocaller restriction is unenforceable on a going forward, prospective basis, which is what the declaratory judgment plaintiffs in *AAPC* sought. But the Supreme Court's re-writing of the statute to sever the government-debt exception does not apply retroactively, and bedrock due process and First Amendment legal principles mandate dismissal of Counts I and II, especially when not doing so will perpetuate the content discrimination that led to the law's facial unconstitutionality in the first place. The closest Plaintiff comes to addressing that specific issue is relying upon inapposite rulings that generally concern severability (but do not address whether it applies retroactively) or that involved "as applied" challenges. The specific issue before the Court, the same one addressed in *Creasy* and *Lindenbaum*, must be answered in the same manner here, and Counts I and II should be dismissed for lack of subject-matter jurisdiction.

## ARGUMENT

### I. PLAINTIFF MISCHARACTERIZES *AAPC*

Plaintiff argues the Supreme Court never declared § 227(b)(1)(A)(iii) unconstitutional, and the Supreme Court ***held*** by a "***supermajority***," whatever that means, that the victims of Congress's content discrimination, such as USHA, can be held liable for speech that was subject to a facially

unconstitutional (but later severed) law, although the beneficiaries of the content discrimination, government debt collectors, cannot. Neither assertion is correct.

### A. The Supreme Court Declared § 227(b)(1)(A)(iii) Unconstitutional

Plaintiff first contends "the Supreme Court did not hold that the TCPA's entire autodialer provision was unconstitutional; it held that the government-debt exemption was unconstitutional." Opp'n at 7. This is parsing taken to an extreme. The Supreme Court was not considering the government-debt exemption in a vacuum. As the plurality opinion made clear, "[t]he initial First Amendment question is whether ***the robocall restriction, with the government-debt exception***, is content-based. The answer is yes." *AAPC*, 140 S. Ct. at 2346 (emphasis added). The robocall restriction with the government-debt exception is, of course, the version of § 227(b)(1)(A)(iii) in effect from November 2, 2015 until July 6, 2020, when the Supreme Court severed the government-debt exception from the statute. The plurality opinion also explains that "***a law*** is content-based if 'a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys,'" and proceeds to observe that "[u]nder ***§ 227(b)(1)(A)(iii)***, the legality of a robocall turns on whether it is 'made solely to collect a debt owed to or guaranteed by the United States.' . . . That is about as content-based as it gets. Because ***the law*** favors speech made for collecting government debt over political and other speech, ***the law*** is a content-based restriction on speech." *Id.* (emphases added) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). The "law" was 47 U.S.C. § 227(b)(1)(A)(iii). Thus, the plurality opinion concluded in its First Amendment section, "the robocall restriction with the government-debt exception is content-based," and it fails strict scrutiny. *Id.* at 2347. Plaintiff's reading is not faithful to the opinion.[3]

Plaintiff's argument to the contrary is based upon out of context language taken solely from the plurality opinion's *severability analysis*. Again, the Supreme Court determined in its First Amendment analysis that "***the robocall restriction*** with the government-debt exception is content-based," and that it (the restriction) fails strict scrutiny. *Id.* at 2347 (emphasis added). As USHA argues, and the *Creasy* and *Lindenbaum* courts correctly understood, that finding rendered §

[3] Justice Gorsuch's opinion, which provided the fifth vote on this question to form a holding, likewise makes clear that the "autodialer provision" was before the Supreme Court. *See id.* at 2363-64 ("The TCPA is full of regulations on robocalls. . . . The only provision before us today, however, concerns robocalls to cell phones, mobile devices, or 'any service for which the called party is charged for the call.' 47 U.S.C. § 227(b)(1)(A)(iii). . . . In my view, the TCPA's rule against cellphone robocalls is a content-based restriction that fails strict scrutiny.").

227(b)(1)(A)(iii) null and void as a violation of the First Amendment. All of the subsequent language in *AAPC* about not invalidating the entirety of the "robocall restriction," *i.e.*, § 227(b)(1)(A)(iii), as unconstitutional was solely in deciding whether the restriction could be saved from unconstitutionality *in toto*, and ***prospectively***, under a severability analysis. While the Supreme Court decided it could, that severability analysis was necessitated by the fact that the robocall restriction with the government-debt exemption, *i.e.*, the law in effect at the time of the alleged calls, violated the First Amendment by discriminating based on content and thus was facially unconstitutional. Otherwise, there would have been no need to sever to save the restriction.

Plaintiff's construct that the Supreme Court ruled only that the government-debt exemption was unconstitutional runs counter to the fact that the First Amendment bars laws "abridging the freedom of speech," (U.S. Const., Amend. I), not a portion of a law permitting speech (such as the government-debt exemption). It would make no sense for a court to find that a "provision" *permitting* speech unconstitutionally discriminates based on the content of speech. The impermissible content discrimination occurred only because disfavored speech was restricted. While Plaintiff takes the *Creasy* and *Lindenbaum* courts to task for supposedly ignoring this issue, they actually addressed it and correctly rejected Plaintiff's proposed reading of *AAPC*:

> [W]hile the plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, **the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis**. Simply put, a restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears. A review of the statutory text before and after the addition of the government-debt exception confirms as much.
>
> * * * * *
>
> Viewing these provisions side-by-side shows how Congress's addition of a single exception could fundamentally alter the *entire* provision. Without the exception, § 227(b)(1)(A)(iii) bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in *AAPC*. . . .
>
> This is not a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[ ] the whole [provision] void." Precisely the opposite is the case here: **the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.**

*Creasy*, 2020 WL 5761117 at *5 (internal citations omitted) (bolded emphasis added).[4]

### B. The Supreme Court Did Not Issue a Holding About Pre-Severance Speech

Plaintiff is equally baseless in contending that seven justices "explicitly agreed with . . . Justice Kavanaugh's holding in footnote 12 on how the post-severance TCPA would apply to previous conduct." Opp'n at 8. Seven justices did not do so, and there is no such holding.

Only Chief Justice Roberts and Justice Alito joined in the portion of Justice Kavanaugh's plurality opinion in which footnote 12 appears. *No other justice expressed any view, let alone agreement, as to footnote 12 of the plurality opinion*. Justice Sotomayor concurred only in the judgment, and all she stated about severability is, "I agree that the offending provision is severable." *AAPC*, 140 S. Ct. at 2357. Justice Breyer, in a concurrence joined by Justice Ginsburg and Justice Kagan, similarly wrote, "[a]s to that question, I agree with Justice KAVANAUGH's conclusion that the provision is severable." *Id.* at 2363. Those are hardly endorsements or agreements that an unconstitutional restriction on speech can still be enforced, on a discriminatory basis, as to speech that took place when the facially unconstitutional law was in effect.

Plaintiff's assumption that these conclusory statements agree with the plurality opinion's reasoning is contrary to the Supreme Court's direction that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation omitted). As neither Justice Sotomayor nor Justice Breyer even discussed the issue of whether prior speech that was restricted by a facially unconstitutional and discriminatory law could be subject to liability retroactively under a severed version of the law, one can hardly conclude that such a position constitutes the narrowest ground upon which five Justices agreed.

This mathematical fact alone dispels the notion that footnote 12 constitutes a holding, but Plaintiff's other arguments in support of that position also fail to stand up to any scrutiny. It is

[4] *See also Lindenbaum*, 2020 WL 6361915 at *7 ("The provision at issue is unlike provisions severed in other cases. Here, the original statute contained a valid time, place, and manner restriction, *i.e.*, it limited all robocall speech. The insertion of the government-debt exception transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction. This is unlike cases in which Congress adds an exception, the entirety of which results solely in unequal treatment, to an otherwise valid statute.") (internal citation omitted).

simply not the case that the footnote "is instrumental to the holding of the case because it explains the liability, or lack of liability, for thousands of potential defendants and millions, if not billions, of calls that fall under the TCPA . . . ." *Id.* It is axiomatic that "[f]ederal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and modifications omitted). Even as to the plaintiffs in *AAPC*, footnote 12 was not "necessary to resolve the appeal because had the Court's decision 'negate[d] the liability of parties who made robocalls covered by the robocall restriction,' among them the plaintiff-respondent in *AAPC*," that would have resulted in a dismissal for lack of subject-matter jurisdiction. Opp'n at 10. There was no claim for liability in *AAPC*. There is nothing in the case records to suggest any potentially violative calls were even made; rather, the plaintiffs were "political and nonprofit organizations that ***want*** to make political robocalls to cell phones." *AAPC*, 140 S. Ct. at 2343 (emphasis added). *See also Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737, 741 (E.D.N.C. 2018) (describing plaintiffs in the same manner).

Nor did Justice Gorsuch describe anything in footnote 12, which was the view of only three justices, as a holding. In fact, he referred to it as a suggestion. *See AAPC*, 140 S. Ct. at 2366 ("Justice KAVANAUGH suggests that the ban on government-debt collection calls announced today might be applied only prospectively."). Plaintiff relies upon the immediately following statement that "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate," (*id.*), but that was obviously stated in the future (unreal) conditional or hypothetical tense. There is no such actual holding in *AAPC*.[5]

## II. THE OPPOSITION IGNORES THAT BECAUSE THE TCPA PROVISION AT ISSUE WAS FACIALLY UNCONSTITUTIONAL AT THE TIME OF THE ALLEGED CALLS, THERE CAN BE NO SUBJECT-MATTER JURISDICTION

Plaintiff ultimately addresses USHA's Motion on the view "that footnote 12 is dicta and

[5] Plaintiff even invokes avoiding "disrespect[ing] the democratic process" as a reason to find footnote 12 represents a holding, (*id.* at 12), but Justice Kavanaugh's disagreement with Justice Gorsuch's position on severance on those grounds was because it would eliminate the TCPA's robocaller restriction *on a going forward basis*. *AAPC*, 140 S. Ct. at 2356. That has nothing to do with the issue of whether the courts have jurisdiction over claims regarding *prior speech* that was subject to the pre-severance, facially unconstitutional law, the issue at hand. The plurality opinion does not directly address that aspect of Justice Gorsuch's criticism of footnote 12.

that only three Justices agreed with it," (Opp'n at 13), but that grudging and qualified nod to reality is all too brief, because he fails to address the constitutional jurisprudence dating back over two hundred years and that is the basis of USHA's Motion and the rulings in *Creasy* and *Lindenbaum*: although the Supreme Court "cure[d] that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute," (*AAPC*, 240 S. Ct. at 2356), severance was prospective only, and does not alter or eliminate the fact that the speech at issue on Counts I and II (telephone calls) allegedly occurred when § 227(b)(1)(A)(iii) was facially unconstitutional and void, meaning the Court has no jurisdiction to enforce that provision. USHA's Motion went into this at length, explained how severability is a "judicial fix" that applies prospectively only, and cited numerous authorities spanning hundreds of years, from *Marbury v. Madison*, 5 U.S. 137 (1803), to the *Lindenbaum* decision last month. *See generally* Mot.

Remarkably, Plaintiff devotes ***not one word*** to the principle that "if the laws" such as § 227(b)(1)(A)(iii) at the time of the alleged violations are unconstitutional and void, "the [federal court has] no jurisdiction of the causes," because "[a]n unconstitutional law is void, and is as no law" so that "[a]n offence created by it is not a crime." *Ex parte Siebold*, 100 U.S. 371, 376, 377 (1879). *See also*, *e.g.*, *Lindenbaum*, 2020 WL 6361915 at *7 ("Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."). Rather than address this bedrock legal principle, Plaintiff instead dwells on severability. *See* Opp'n at 13-19. But that is an irrelevant digression. USHA does not dispute that, after finding the version of § 227(b)(1)(A)(iii) containing the government-debt exemption to be facially unconstitutional for content discrimination, the Supreme Court in *AAPC* severed the government-debt exemption to save the robocaller restriction from invalidation and it can be enforced, in severed form, prospectively. But severance does not mean the unconstitutional law never existed, that the severed version of the law can now be enforced retroactively as if the law had never been enacted in unconstitutional form, or that the victims of content discrimination can now be subjected to liability, still in discriminatory fashion, for speech that had been facially and unconstitutionally discriminated against (with government debt collectors remaining exempted).

As USHA explained in its Motion, the Supreme Court has ruled that a legislative amendment applies only prospectively, and will not preclude a challenge to the prior version of a law that was facially unconstitutional. In *Grayned v. City of Rockford*, a case that, like this one, involved a restriction on speech that discriminated based on content in violation of the First

Amendment, the Supreme Court observed that courts "[n]ecessarily . . . must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted," not a later amended version. 408 U.S. 104, 107 n.2 (1972).[6] That a facially unconstitutional restriction of speech was cured by judicial severance makes no difference to the principle, completely ignored and unrebutted by Plaintiff, that a curative amendment cannot be retroactively applied to an unconstitutional law to permit its enforcement for prior speech. *Accord Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 (Fed. Cir. 2020) (O'Malley, J., concurring) ("[J]udicial severance is not a 'remedy'; it is a forward-looking judicial fix."). As the *Lindenbaum* court observed, "[i]t would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment." 2020 WL 6361915 at *7.

Plaintiff never acknowledges or addresses these principles or USHA's authorities. Instead, Plaintiff unleashes string citations of TCPA cases, (*see* Mot. at 17-19), but ***none*** of them addressed the question of retroactive application of severance. At most, those courts rejected the argument (pre-*AAPC*) that a finding that the robocaller restriction with the government-debt exception was unconstitutional required dismissal, finding the exception severable. There is no indication that any defendant in those cases raised the argument made here by USHA and in *Creasy* and *Lindenbaum*, a point made abundantly clear by the fact that one of the decisions cited by Plaintiff – *Rogers v. Interstate National Dealer Services, Inc.*, No. 1:20 CV 00554, 2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) – was issued ***by the same judge who wrote the Lindenbaum decision***.

Plaintiff primarily relies upon two authorities, but neither supports him. Contrary to Plaintiff's contention, the Supreme Court did not hold in *Eberle v. People of State of Michigan*, 232 U.S. 700 (1914), that "the violation of a validly enacted statute is not excused by the invalidity of an unrelated and severable amendment" and that "an unconstitutional amendment to an otherwise constitutional law is a nullity." Opp'n at 14. In fact, the language that Plaintiff quotes from *Eberle* makes clear that it was the Michigan Supreme Court that made the rulings regarding constitutionality and severability, they were not before the United States Supreme Court, and the appeal before it thus raised questions of state law regarding the referendum by which the law at issue was adopted that also "was for the state court to determine . . . ." 232 U.S. at 705.

---

[6] *See also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) ("A defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity.").

Moreover, the reasoning of the Michigan Supreme Court regarding the amendments as nullities that were unconstitutional from the outset, without effect on the underlying prohibition law because they were "extraneous," is factually inapposite. As discussed above, the Supreme Court held that the addition of an exception to a speech restriction rendered the entire "robocaller restriction with the government-debt exception . . . content-based" and therefore unconstitutional. *AAPC*, 140 S. Ct. at 2347. *See also* discussion at 4-5, *supra* (discussing *Lindenbaum* and *Creasy*).

*Eberle* simply does not stand for what Plaintiffs contend it does. While *Eberle* was cited in the *AAPC* plurality, the opinion "contained no discussion regarding *Eberle* and its effect on the retroactivity of severed statutes. Rather, it cited *Eberle* and other cases from early last century to support the concept that severance of the government-debt exception does not affect the validity of the remainder of the statute." *Lindenbaum*, 2020 WL 6361915 at *7. Any suggestion that the plurality in *AAPC* embraced the notion that the government-debt exception was always a nullity cannot be squared with footnote 12's suggestion that government debt collectors should not be liable for pre-severance speech because, "in essence, footnote 12 indicates the statute as amended should be enforced with respect to government-debt collector robocalls made during this period," *i.e.*, they continue to remain exempted from liability. *Id.* (quoting *AAPC*, 140 S. Ct. at 2355, n.12).

The other decision Plaintiff primarily relies upon – *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) – is also inapposite and in fact supports USHA. In *Miselis*, the Fourth Circuit held that the Anti-Riot Act, 18 U.S.C. §§ 2101-02, was facially overbroad under the Free Speech Clause of the First Amendment "in *some* of its applications." *Id.* at 525. The Fourth Circuit proceeded to sever from the law the offending provisions, (*id.* at 541-44), but that is where the similarities end.

The defendants in *Miselis* advanced the entirely different argument that because "the indictment and, by extension, their guilty pleas . . . are premised on a conspiracy to violate the statute as a whole, without specifying which of its alternative purposes they conspired to (and in fact did) carry out," their convictions could not stand if any provision of the Anti-Riot Act were invalidated. *Id.* at 547. The Fourth Circuit disagreed, finding that because the defendants engaged in acts of physical violence, which "have manifestly nothing to do with speech . . . or any other First Amendment activity," and they "necessarily conceded . . . that the Anti-Riot Act poses no constitutional concern as applied to [such] conduct," their convictions remained intact. *Id.* at 547-48. Thus, *Miselis* did not involve a case where "a speaker [would] be punished for engaging in speech that was restricted in an unconstitutional fashion," (*Creasy*, 2020 WL 5761117 at *3), an

analysis that the Supreme Court instructed "[n]ecessarily . . . must consider the facial constitutionality of the ordinance in effect" at the time of the speech. *Grayned*, 408 U.S. at 107 n.2. Rather, they were punished for non-speech activity that did not implicate any First Amendment rights or any restriction on speech that was declared unconstitutional. But there is nothing other than protected First Amendment activity at issue on Counts I and II, raising the same concern about subjecting speech to a restriction that was facially unconstitutional that led the courts in both *Creasy* and *Lindenbaum* to find lack of subject-matter jurisdiction. "The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written." *Lindenbaum*, 2020 WL 6361915 at *7 (citing *Grayned*, 408 U.S. at 107 n.2).

Relatedly, the Fourth Circuit stressed that it did not find the Anti-Riot Act to be facially unconstitutional, whereas the Supreme Court did so find as to § 227(b)(1)(A)(iii) in *AAPC*. *Compare Miselis*, 972 F.3d at 525 (finding Anti-Riot Act overbroad "in *some* of its applications") *with AAPC*, 140 S. Ct. at 2346 ("As relevant here, a law is content-based if 'a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys.'") (quoting *Reed*, 576 U.S. at 163).[7] And, indeed, the Fourth Circuit observed that a successful facial challenge like the one in *AAPC* ***would have*** voided the defendants' convictions. *See Miselis*, 972 F.3d at 548 ("[A]nything less than facial invalidation of the statute affords the defendants no relief from their convictions."). Thus, *Miselis* in fact supports USHA's Motion.[8]

## CONCLUSION

For the foregoing reasons, USHA respectfully requests that the Court enter an order dismissing Counts I and II of the FAC for lack of subject-matter jurisdiction, and providing any other relief the Court deems just and appropriate.

---

[7] *See also*, *e.g.*, *American Association of Political Consultants, Inc. v. Federal Communications Commission*, 923 F.3d 159, 164 (4th Cir. 2019) ("Being confronted with a facial constitutional challenge to a statute, we review the various issues de novo."); *Lindenbaum* ("[A]s the Fourth Circuit noted, this case involves a facial, as opposed to an as-applied, challenge.").

[8] So, too, does *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). Again, Plaintiff mistakenly considers a severance ruling to maintain part of a law going forward as somehow probative of whether the severed statute applies retroactively, and ignores the fact that the Supreme Court remanded the case to address whether the agency's subject act was validly ratified. *Seila Law*, 140 S. Ct. at 2208. As the *Lindenbaum* court observed, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified." 2020 WL 6361915 at *6 n.1.

Dated: November 30, 2020

Respectfully submitted,

By: */s/ Roy Taub*
Jeffrey A. Backman
Florida Bar No. 662501
Roy Taub
Florida Bar No. 116263
Gregg I. Strock
Florida Bar No. 1010140
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com
gregg.strock@gmlaw.com
lisa.webster@gmlaw.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on November 30, 2020.

*/s/ Roy Taub*
Roy Taub